Green, J.
delivered the opinion of the court.
The marriage of the defendant in error to Mitchel, he having at the time another wife, to whom he was lawfully married, was' void to all intents and purposes. This transaction must be considered, therefore, as'though the marriage had never taken place. Her condition was not in law changed thereby. She continued a feme sole, and Mitchel was a stranger. If thus situated, her father gave the negro in question to her, she was not the less capable of taking and holding the title, because of her void marriage to Mitchel. True, the father supposed she was lawfully married, and that the property he was bestowing on her, would by virtue of the marriage vest in Mitchel. But that did not máke it a gift to Mitchel. He made the gift, supposing a certain legal relation to exist between his daughter and Mitchel, and that from that relation, certain legal consequences would result. If in point of fact, this legal relation did not exist, does not the conclusion follow, that the legal consequences did not result? It is said the father gave the property because he thought his daughter was married. That may be true, but it does not follow that he must be therefore considered as giving it to Mitchel. True, he might have done so; and if he had, the present defendant in error would clearly have no right to maintain this action. But the question of fact was fairly left to the jury. They have found that the negro was given to the daughter. There was evidence on both si des; and upon weighing all the proof, the jury have come to a conclusion with which we are satisfied. This court has uniformly held, that there must be a great preponderance of evidence to induce the reversal of a judgment, where there is no error in law. When Mitchel- sold the negro to Sellars, the defendant in error was willing to the sale, and so expressed herself after-wards, and after she bad heard that he had another, wife. But, she was then an infant, and wholly ignorant of her *506 rights. If she had made the sale herself, she would not have been bound by it; much less can she be bound, because she consented that her supposed husband should make the sale.
It is alleged, that in thus consenting to the sale, she was guilty of a fraud on Sellars, the purchaser. This cannot be, seeing she supposed Mitchel had a lawful right to make the sale, and that she had no right to prevent it. Her conduct was perfectly fair, taking into consideration the want of knowledge under the influence of which she acted. But it is said she confirmed the sale afterwards. The answer is, she was still an infant, and as she could make no contract binding on her, nothing she could say in affirmance of one already made, could bind her. This suit is the most conclusive- evidence of her intention to disaffirm the sale. It is said that the suit should have been in the name of Davis, the father. Such suit could not have been sustained, because he certainly parted with the- property. If he gave it to Eliza Ann, it belonged as much to her as if she had never thought of a marriage.
The court is therefore-of opinion that there is no-error in this record, and that the judgment be affirmed.
Judgment affirmed.